## UNITED STATES *v.* BURTON COAL COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 100. · Argued January 10, 1927.—Decided February 21, 1927.

1. Where a buyer, in violation of an executory contract of sale, refuses to accept the commodity sold, the seller may recover the difference between the contract price and the market value at the time when and at the place where deliveries should have been made.  P. 340.
2. The application of this rule is not affected by the fact that the seller relied on or intended procuring the commodity sold through contracts with third persons under which he would have been obliged to pay more than the market price existing when his purchaser refused to accept deliveries.  P. 340.

60 Ct. Cls. 294, affirmed.

APPEAL by the United States from a judgment of the Court of Claims allowing damages for breach of a contract to accept and pay for coal.

42847°—27——22

*Assistant Attorney General Galloway,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. Maclay Hoyne* for the appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The judgment is for damages for breach of contract by the United States to accept and pay for coal purchased from appellee for use at army posts in the Chicago district. The only question presented for our consideration is whether the Court of Claims applied the right measure. It gave the difference between contract price and market value at the times and places specified for deliveries. Appellant maintains that, upon the facts of the case, that rule is not applicable, and that appellee is limited to recovery of the amount of profits it would have realized if appellant had accepted and paid for all the coal covered by the contract.

The facts on which appellant's contention is based follow. Appellant and appellee made a contract as of September 10, 1920, by which the former agreed to take and pay for, and the latter agreed to furnish and deliver, 150,-000 tons of coal at $6.75 per ton. The contract contemplated the production of the coal at mines in southern Illinois: 40,000 tons at the White Ash Mine of the Johnson City Washed Coal Company, 50,000 tons at the Paradise Mine of the Forester Coal and Coke Company, and 60,000 tons at the Freeman Mine of the Freeman Coal Mining Company. But it was agreed that appellee might furnish coal from other mines if, for any reason for which it was not responsible, it should be unable at any time to furnish coal in sufficient quantities from the mines mentioned. Appellant agreed to furnish cars and give shipping directions. Appellee agreed to make deliveries on cars at each of the mines in specified quantities per week.

Appellee is a selling company and did not own or operate any of the mines named and did not have any interest in any of the companies owning or operating them. It had arrangements with the mining companies named, under which it, in its own name and under contracts between it and purchasers, sold coal produced from the mines. The president of appellee was also the president and principal owner of the company operating the White Ash Mine. It was customary for selling companies to assist in financing mining companies. Appellee advanced the companies operating the White Ash and Paradise mines funds to meet their payrolls. The Freeman mine was similarly financed by another selling company. Mines in southern Illinois have no facilities for storing coal. The general practice is to load the coal, as it comes from the mines, directly into cars. Appellee delivered the coal to appellant in that way. And, under the contract, 53,146 tons were accepted and paid for. Appellee was ready to deliver the balance, but appellant refused to take or pay for any more. The difference between the contract price and market value at the times and places specified for deliveries was $4.60 per ton; and this, applied to the 96, 854 tons that appellant refused to take, produces $445,528.40. Judgment was given for that amount. Under the agreements appellee had with the companies operating the mines, its profits on the tonnage refused would have been $46,065.97.

In support of its contention that recovery must be limited to that amount, the United States emphasizes that appellee had no mine or coal at the time of the breach; that the coal refused had not been mined; that it was not shown that appellee was bound to take or pay for any of that coal or that it suffered any loss because of the termination of the mining and deliveries under the agreements between it and the mining companies, and that appellee made no claim for damages suffered by such companies.

And appellant insists that the judgment is erroneous because it puts appellee in a better position than if the contract had been performed.

*United States* v. *Smith*, 94 U. S. 214, 218, 219, and *United States* v. *Wyckoff Co.*, 271 U. S. 263, are cited and relied on by appellant. They do not apply. Each arose out of a contract covering construction work for the United States. Performance by the contractor was delayed by the interference or default of the United States; and the action was for the resulting damages. The court held that the measure of damages for delay was the actual loss sustained by the contractor. Here the appellant by its refusal to accept the coal prevented appellee from completing its part of the contract. The coal had a market value and it was less than the contract price. The applicable measure of damages is fixed by the rule of law that, where a buyer in violation of an executory contract of sale refuses to accept the commodity sold, the seller may recover the difference between the contract price and the market value at the times when and the places where deliveries should have been made. 2 Williston on Sales, § 582. The facts brought forward by appellant do not take the case out of the general rule. Appellee was bound to deliver the quantity of coal covered by the contract. Failure of the sources referred to in the contract would not excuse it. In contemplation of law it could have obtained the coal at market prices prevailing at the times when deliveries were required under the contract. The contract was not for production or mining, but for sale and delivery, of coal. Appellant and appellee were the only parties to it. There was no contract relation between appellant and any of the mining companies. Their default would not make them liable to appellant or relieve appellee from the obligation to deliver the coal to appellant. Appellant's liability is not measured by appellee's losses or gains, if any, under its agreements with the mining companies. Appellee is not entitled to have the full con-

tract price of the coal not delivered, but is chargeable only with its market value. The difference between that value and the contract price is the amount of damage deemed by the law directly and naturally to result in the ordinary course of events from the appellant's breach of contract. The cost to appellee of securing the coal and the amount of its profits are immaterial. *Garfield &c. Co.* v. *N. Y., N. H. & H. Railroad,* 248 Mass. 502, 506; *Kadish* v. *Young,* 108 Ill. 170, 176, 186. Cf. *Jamal* v. *Dawood* [1916], 1 A. C. 175. The judgment leaves appellant in as good position as if it had accepted and paid for the coal in accordance with its contract.

*Judgment affirmed.*