**RENNER CO. v. McNEFF BROS.**

**No. 7600.**

Circuit Court of Appeals, Sixth Circuit.

Feb. 15, 1939.

Norman A. Emery, of Youngstown, Ohio (Harrington, Huxley & Smith, of Youngstown, Ohio, on the brief), for appellant.

C. M. Vrooman, of Cleveland, Ohio (Garfield, Cross, Daoust, Baldwin & Vrooman, C. M. Vrooman, and F. J. Amer, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appellee brought an action to recover damages for breach of contract. At the conclusion of the testimony each party moved for directed verdict, and the court withdrew the case from the jury, directed a verdict for appellee, and entered judgment in the amount of $21,370 with interest. The principal legal question is whether the District Court applied the proper measure of damages.

Appellant, a brewing company, executed a series of contracts in which it agreed to buy from appellee certain quantities of hops at specified prices, for delivery in October or November of the years 1935, 1936, and 1937, of the crops of those respective years. On July 25, 1935, attorneys for appellant by letter notified appellee that because of the inferior hops delivered by appellee, appellant would accept no more hops under the contracts.[1] This notice of re-

---

[1] The letter stated: "As you know, there were executed a series of contracts covering deliveries of hops from 1933 through October and November of 1937. * * * The Renner Company has suffered irreparable damage by reason of the inferior hops delivered by you so far and they have asked us to advise you that they will accept no more hops under their contracts with you. The next deliveries were to have been made during October and November of 1935 and it is to these deliveries and all deliveries after that that we refer."

pudiation by its terms applied to the 1935 deliveries and to all others after that time. Appellee shortly thereafter instituted this action.

 While appellee made efforts after the repudiation to keep the contracts in force, this did not change the legal effect of appellant's refusal to accept the hops contracted for. "Manifestation by the injured party of a purpose to allow or to require performance by the promisor in spite of repudiation by him, does not nullify its effect as a breach. * * *" Restatement of Contracts, § 320. Appellant therefore had an option either to sue immediately or to wait for the time set for performance. Roehm v. Horst, 178 U.S. 1, 10, 20 S.Ct. 780, 44 L.Ed. 953.

The principal question is whether the evidence as to the amount of appellee's damage is sufficient to support the finding of the District Court. The decision of this question in turn depends upon whether the correct measure of damages was applied.

Appellant contends that the correct measure of damages is the difference between the contract price and the market price as of the times when the deliveries were to have been made under the contracts. This is the rule laid down in United States v. Burton Coal Co., 273 U.S. 337, 47 S.Ct. 351, 71 L.Ed. 670. No evidence was given of such prices, and if this rule is applied the judgment must be reversed. Appellee urges that under the rule of Roehm v. Horst, supra, where, as here, the commodity was bought and sold for future delivery, the correct measure of damages is the difference between the contract price and the market price of the hops in July, 1935, the time of repudiation, for delivery at the times called for in the contracts.

Tested by the latter rule, the record contains ample evidence to support the judgment. The testimony of the sole witness sets forth the market price on July 25, 1935, of hops for delivery at the times called for in the contracts in suit. He stated that hops for October or November delivery of the 1935 crop could have been sold in July, 1935, at ten cents; that the price at that time for hops of the 1936 crop for delivery in October or November, 1936, would have been twelve cents a pound Coast, and that the market price of contracts for the 1937 crop to be delivered in October, 1937, was twelve cents Coast. The amount of damages was calculated on the difference between these prices and the

prices fixed in the contracts, with an allowance for delivery costs. No evidence was given as to the market price at the various times set for delivery.

We see no reason to depart from the rule announced in Roehm v. Horst, supra. That case, on its facts, is almost identical with the instant case so far as the present question is concerned. It involved a series of contracts covering the furnishing of a specified number of bales of hops at different times during the period of five years, which period had not expired when the breach occurred, and when the action was instituted. It is a custom of long standing among hop dealers to do business by way of future contracts, and this custom was adhered to in the Roehm case, as in the present case. The court there applied the rule that "plaintiff is entitled to compensation based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself," and declared at page 21 20 S.Ct. at page 788, that "plaintiffs showed at what prices they could have made subcontracts for forward deliveries according to the contracts in suit, and the difference between the prices fixed by the contracts sued on and those was correctly allowed."

 Appellant contends that the decision in United States v. Burton Coal Co., supra, in effect overrules that of Roehm v. Horst, supra. While it is subsequent, it does not refer to the Roehm case, and the facts present a substantial distinction. In the hop trade it is the custom to contract for long periods in advance because of the fact that in certain important areas the crop takes more than one year to mature for commercial production. In Oregon, for instance, it usually requires three years to secure the full crop. For the production of a crop in one year irrigation is required. Market value, therefore, as of time of delivery, could not be ascertained either in the Roehm case or in the instant case until time set for performance of the series of contracts. But the time for performance of the last contract was 1937, and the petition was filed in January, 1936. Therefore it is necessary to apply the measure of damages based upon the value, at time of repudiation, of the commodity for delivery at the times specified in the

contracts. Where, as here, there is an established market for the purchase and sale of such contract rights, the value of such rights at the time of breach is evidence of damage at the time of breach. Cf. Restatement of Contracts, Section 338, comment b. This feature presents the distinction between the Burton and the Roehm cases, supra, and the Roehm decision fits the instant case precisely. Applying its rule, the amount of the verdict was correct.

Appellant relies on Section 8444, General Code of Ohio, which in paragraph (3) states the rule of damages contended to be applicable, but qualifies the rule by adding the words "in the absence of special circumstances." Here there are special circumstances which place the case outside of the strict rule of the statute. It was necessary for appellee, in order to insure delivery under the contracts, to contract with growers of hops well in advance of the harvesting and at a price which might be different from the market price at the time appellee was required to deliver the hops to appellant. Since Section 8444, General Code, recognizes the possible existence of special circumstances as a reason for varying the general rule the application of the measure of damages made by the District Court was not in violation of the statute.

The District Court was correct in dismissing appellant's counterclaim, which claimed damages arising from the use of hops delivered by appellee and alleged to be inferior. No notice of the claimed breach of warranty had been given prior to July 25, 1935, and as a matter of law this did not constitute a reasonable time. The seller therefore was not liable. Section 8429, General Code of Ohio;[2] Columbia Axle Co. v. American Automobile Ins. Co., 6 Cir., 63 F.2d 206; Marmet 'Coal Co. v. People's Coal Co., 6 Cir., 226 F. 646; In Herbrand Co. v. Lackawanna Steel Co., 6 Cir., 280 F. 11, no question of notice was involved.

Appellant's allegations that appellee made certain misrepresentations, asserted in the counterclaim, do not state a cause of action, as the misrepresentations alleged were not representations of existing facts.

The judgment is affirmed.

---

[2] Section 8429. "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."