CONTINENTAL COLLECTION &
DISPOSAL, INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 91–1536C.

United States Court of Federal Claims.

Oct. 6, 1993.

Darill L. Holden, Oklahoma City, OK, attorney of record for plaintiff.

Agnes Brown, Judith N. Macaluso, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, DC, with whom were Terrence S. Hartman, David M. Cohen, and The Assistant Attorney General, attorneys of record for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

This action comes before the court on defendant's motion for summary judgment, based on plaintiff's failure to state a claim for which relief can be granted. Plaintiff alleges that defendant breached the contract between the parties by failing to exercise options to extend the contract for additional years. Plaintiff requests damages to compensate for those years. Defendant denies plaintiff's allegations and asserts that the government properly exercised its right, based on the contract, not to renew the contract for additional years.

After careful consideration of the filings submitted by the parties, and for the reasons discussed below, the court, hereby, GRANTS the defendant's motion for summary judgment.

### FACTS

On September 13, 1988, Continental Collection and Disposal, Inc. (CCD) was awarded Department of the Army Contract No. DABT39–88–C–3126. The contract required CCD to perform work associated with collecting and disposing of all refuse generated at Fort Sill, Oklahoma, and to operate the fort's sanitary landfill. Pursuant to the contract, the Army agreed to pay CCD approximately $386,460.00 for one year of service.

Performance of the contract began October 1, 1988 and was to continue for one year, ending on September 30, 1989. Clause 52.217–9 of the contract, titled "Option to Extend the Term of the Contract—Services," stated the following agreement concerning renewal of the contract for succeeding years:

(a) The Government *may* extend the term of this contract by written notice to Contractor no later than 5 calendar days prior to the expiration date of the contract; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. *The preliminary notice does not commit the Government to an extension.*

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed Five (5) years.

(Emphasis added.)

On January 5, 1989, approximately three (3) months after contract performance began, CCD president Ken Mathews sent a letter to the Directorate of Contracting at Fort Sill describing CCD's intention to implement a new system of refuse collection. CCD based its authority to make this equipment change on Article C.3 of the contract. The letter stated that CCD exercised its

option to reject all government-furnished property dempster dumpster (hoist and haul-type) containers.... In return, CCD will provide necessary property, equipment, or items adequate in quality and suitable for the intended purpose, to perform work and provide services in the established time frames. This activity will not in any way be a cause for interruption of said services.

CCD claimed that this system would be less costly and more efficient. The letter stated that "[n]o government funds would be required." In March 1989, CCD began using the new "front loader" system.

On March 10, 1989, contracting officer Leona Evans sent CCD a letter stating that "the Director of Engineering has made a visual observation of the equipment you have selected to utilize under this contract and states it is unacceptable." The letter explained that trash blowing from the dumpsters during the emptying process required additional military personnel. The government, therefore, requested that CCD resume use of its original collection system.

After discussions between the parties, CCD was permitted to resume use of the new system. CCD was also reimbursed for losses suffered due to the delayed implementation of the new system, which was less costly for the contractor to operate than the old system: $49,750.00 was paid on April 19, 1989, and $38,992.64 was paid on August 11, 1989.

On July 8, 1989, contracting officer Leona Evans sent a letter to CCD, notifying the contractor that the government was considering renewal of CCD's contract for another year. The letter stated in part:

Your attention is invited to Section I, I2 Option to Extend the Term of the Contract. The Government *is considering* renewal of subject contract for the period 1 October 1989 through 30 September 1990. A Modification will be issued under the authority of the option provision, subject to availability of FY 90 funds.

This letter constitutes your *preliminary* notice from the contracting officer that an option extension *is being considered, however, this preliminary notice is not to be deemed to commit the Government to an extension.*

(Emphasis added.) The record also includes another copy of this letter, bearing the notation "Received by Ken Mathews," the president of CCD, and bearing the date July 25, 1989.

According to affidavits supplied by the defendant, problems arose with the contractor's performance, including inoperable heavy equipment at the landfill and failure to meet compaction and daily soil coverage requirements set forth in the contract. In July 1989, the Army Inspector General's Office conducted an investigation of refuse collection and operation of the sanitary landfill at Fort Sill. The government claims it was obligated to provide personnel and equipment to perform these required services to ensure proper disposal of waste, including hospital infectious waste and industrial waste. The Oklahoma State Health Department also inspected the landfill on August 3 and September 11, 1989, at which time problems with coverage were noted. CCD was not present at these inspections.

The contracting officer met with CCD once in August 1989 and again on September 8, and September 12, 1989 to discuss problems with contract performance. At the September 12, 1989 meeting, the contracting officer informed CCD of the previous day's inspection and notified the plaintiff that the government had decided not to exercise the option to renew the contract for a second year. CCD's contract for the first year of service expired September 30, 1989. On October 4, 1989, a third inspection of the landfill site by the Oklahoma State Health Department found that CCD had corrected the deficiencies at the landfill (only a fence was found to be down). By letter dated October 10, 1989, CCD was sent two Contract Discrepancy Reports (CDRs). According to plaintiff, it was not given notice of contract deficiencies during the original one year contract performance period.

The government extended the contract with CCD for one month, from October 1 to October 31, 1989. According to the September 27, 1991 final decision of Contracting Officer Larry Keith Kelman, "No options were exercised under the subject contract." A solicitation for an interim contract was then issued. CCD was awarded an interim contract beginning November 1, 1989 and ending April 1, 1990, in order to allow the defendant time to prepare a new competitive solicitation. CCD also bid on the new long-term contract, but was not successful. On March 1, 1990, the government awarded a new contract for the collection of refuse to A.J. Fowler Corpora-

tion. The new contract did not include any requirements to operate the post sanitary landfill. On March 23, 1990, CCD was defaulted for failure to perform, based on plaintiff's failure to pay rent on leased equipment.

On October 5, 1990, CCD filed a complaint, Case No. 90–3836C, in this court seeking $1,562,640.00 for breach of contract due to the government's failure to exercise the renewal option. On January 22, 1991, the government filed a motion to dismiss based upon CCD's failure to submit a properly certified claim to the contracting officer. On July 24, 1991, this court issued an Order dismissing the complaint, without prejudice, and by agreement of the parties, so that plaintiff could first submit its claim to the contracting officer for exhaustion of its administrative remedies. Judgment dismissing plaintiff's complaint, without prejudice, was entered on July 25, 1991.

On August 2, 1991, plaintiff submitted a claim to the contracting officer at Fort Sill. On September 27, 1991, the contracting officer issued his final decision and denied plaintiff's claim. On October 23, 1991, plaintiff filed a new complaint in this action, case no. 91–1536C, alleging that the government had breached the contract at issue by wrongfully refusing to extend the contract. Plaintiff seeks $1,562,640.00 in damages.

On August 21, 1992, defendant filed a motion for summary judgment, based on plaintiff's failure to state a claim for which relief can be granted, and in which defendant argues that as a matter of law, the government did not breach the contract with CCD. On January 19, 1993, by leave of the judge, plaintiff filed its objection to the motion for summary judgment. Plaintiff urges that summary judgment is not appropriate at this time because material facts are in dispute. Defendant then filed a reply to the plaintiff's objection to defendant's motion for summary judgment.

1. In general, the Rules of this court are closely patterned upon the Fed.R.Civ.P. Therefore, precedent under the Fed.R.Civ.P. is relevant to interpreting the Rules of this court, including

### DISCUSSION

Summary judgment in this court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[1] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules of this court provides that, in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Unig Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.

Rule 56. *See Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl. Ct. 67, 70 (1989).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H. F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

▆▆▆ The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If, under no scenario, can the nonmoving party present the evidence to establish support for its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Under Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

In the instant case, the court finds that there are no genuine issues of material fact in dispute and that the case may properly be decided by this court on a motion for summary judgment. Any issues which are in dispute are immaterial to the resolution of the case. The legal issue presented to the court is whether, pursuant to the terms of the contract, defendant had the right to decline to exercise the contract option to extend the lease for succeeding years. This question is a matter of contract interpretation which the court can resolve without trial.

▆▆▆ The interpretation of a government contract is a matter of law to be decided by the court. *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir.1985); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965). When interpreting the language of a contract, a court must give reasonable meaning to all parts of the agreement and not render any portion meaningless, or interpret any provision so as to create a conflict with other provisions of the contract. *Fortec Constructors v. United States*, 760 F.2d at 1292; *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir.1983). Contract language should be given the plain meaning which would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances. *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. at 388, 351 F.2d at 975; *Firestone Tire &*

*Rubber Co. v. United States,* 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456, *aff'd.,* 785 F.2d 325 (Fed.Cir.1985); without rewriting or varying terms, *see Hyman Constr. Co. v. United States,* 832 F.2d 574, 581 (Fed.Cir.1987); *Haehn Management Co. v. United States,* 15 Cl.Ct. 50, 59 (1988), *aff'd,* 878 F.2d 1445 (Fed.Cir. 1989).

■ Plaintiff contends in its complaint that "Defendant wrongfully refused to extend the contract which is a breach of contractual obligations." Plaintiff argues that CCD fully performed its duties during the one year contract, and that, therefore, the government was obligated to extend the contract for succeeding years. Plaintiff also states: "It would be unconscionable to assert that the Government could arbitrarily decide to refuse to extend the option." As defendant notes, however, the contract language in question does not include any performance-based obligation on the part of the government to renew the contract. The relevant section of the contract states:

52.217.9 OPTION TO EXTEND THE TERM OF THE CONTRACT–SERVICES (APR 1984)

The Government *may extend* the term of this contract by written notice to Contractor no later than 5 calendar days prior to the expiration date of the contract; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(Emphasis added.) This clause clearly and unambiguously indicates that, although CCD was bound to make its services available to the government for succeeding years, the government had the option but not the obligation to use those services. Moreover, there is no mention in the contract of the effect of CCD's performance

on the decision of whether or not to exercise an option. The language "[t]he government *may extend*" establishes that exercise of the option is at the government's discretion. The government's right not to extend the option, which plaintiff characterizes as unconscionable, is simply a right of the defendant under the explicit terms of the contract.

■ An option contract generally binds the option giver, not the option holder. As quoted in *Dynamics Corp. of America v. United States,* 182 Ct.Cl. 62, 74, 389 F.2d 424, 431 (1968), Professor Corbin described an option contract as follows:

[T]he option Holder has the legal power to consummate a second contract for the contemplated exchange of equivalents and at the same time the legal privilege of not exercising it. The option giver, on the other hand, has the correlative liability to become bound to execute that exchange, and at the same time a disability to avoid it.

*Id.* (quoting 1A Corbin, Contracts § 259 at 464 (1963 ed.)).

■ The United States Claims Court, the predecessor court to the United States Court of Federal Claims,[2] stated likewise:

The government's failure to exercise an option in a contract does not ordinarily give rise to a breach of contract action. A standard option provision in a government contract obliges the contractor to perform the additional contract work if the government chooses to exercise the option, but it does not create a legal obligation on the part of the government to exercise the option and require the work. *See Dynamics Corp. of Am. v. United States,* 182 Ct.Cl. 62, 74, 389 F.2d 424, 431 (1968); *Government Systems Advisors, Inc. v. United States,* 847 F.2d 811, 813 (Fed.Cir.1988).

*Optimal Data Corp. v. United States,* 17 Cl.Ct. 723, 731 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990).

**2.** The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, changed the name of the United States Claims Court to the United

States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims court in all respects.

In the case at bar, the use of the words in the contract "[t]he government may extend" demonstrates that the government's agreement with CCD was an option which bound CCD. The absence of contract language binding the government to extend the contract further confirms the government's right not to exercise the contract option. *See Solar Turbines, Inc. v. United States,* 16 Cl.Ct. 304, 316–17 (1989). Therefore, the effect of the language of the contract including clause 52.217–9, titled "Option to Extend the Term of the Contract–Services," is that the government, at its own discretion, and using any appropriate criteria for its decision, may unilaterally choose not to extend the contract for additional years.[3]

CCD's claim that the government was required to extend the contract if CCD performed pursuant to contract expectations during the first year is simply mistaken. There is no such language in the contract. Moreover, CCD's argument that, had it known the government was under no obligation to renew its contract, it would have submitted a higher priced bid, and would not have invested in expensive new equipment, is unpersuasive. The decisions regarding the cost figures included by plaintiff in its bid, and CCD's decision to purchase more efficient machinery, was made by plaintiff on its own, not in response to any obligation imposed by the government. Because CCD remained in competition with other contractors for business beyond the one-year term of its contract, plaintiff had every incentive to offer low prices and to upgrade its service. CCD has failed to make a convincing argument that the court should interpret the contract at issue as anything but a one-year contract with an option to renew, solely at the discretion of the government.

Moreover, the language included in the July 8, 1989 letter from the contracting officer to CCD stating that the government was considering renewal of the contract with CCD reaffirms the nonbinding nature of the option. The letter states: "The Government is considering renewal of subject contract...." and "This letter constitutes your preliminary notice ... that an option extension is being considered, however, this preliminary notice is not to be deemed to commit the Government to an extension." The most definitively worded section of the letter "A modification will be issued under the authority of the option provision, subject to the availability of FY90 funds" still includes conditional language. When read in the context of the language of the letter quoted directly above, this letter should not have led "a reasonably intelligent person acquainted with the contemporaneous circumstances," in this case, the contractor, to believe a binding commitment to renew had been created by the letter. *See Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. at 388, 351 F.2d at 975.

In its opposition to the motion for summary judgment, plaintiff advances a new argument, not contained in its complaint, in an attempt to demonstrate breach of contract. Plaintiff raises several occasions on which, according to the plaintiff, the government allegedly demonstrated "bad faith" in the administration of the contract. Plaintiff alleges that these instances of bad faith led the government to break the contract with CCD by refusing to extend CCD's contract, and that these instances of bad faith create genuine issues of material fact, which require fact finding at trial.

 Plaintiff is correct that the government, like all contracting parties, is obliged to deal in good faith with contrac-

---

**3.** Although, in its brief, plaintiff quotes language from *Phillips Petroleum Co. v. Curtis,* 182 F.2d 122, 125 (10th Cir.1950) for the proposition that "when a contract is optional in respect of one party thereto, it will be strictly construed in favor of the other party ...," the statement does not help understand the obligations of the parties in the instant case. In the first place, the contract at issue is clear and no interpretation of the words of the contract will result in plaintiff's interpretation or create a binding commitment on the part of the government to exercise the option. Moreover, in the *Phillips Petroleum* case, the United States Court of Appeals for the Tenth Circuit explicitly is interpreting Oklahoma State law, and the guidance offered is not precedential in this court.

tors. As stated in *International Fidelity Ins. Co., Inc. v. United States:*

> The Court of Claims held in *Commerce International Co. v. United States,* 167 Ct.Cl. 529, 536, 338 F.2d 81, 85 (1964), that the duty of the government to carry out its bargain reasonably and in good faith was implicit in all government contracts. *See also Malone v. United States,* 849 F.2d 1441, 1445-46 (Fed.Cir. 1988) (holding that the government's breach of its duty of good faith and fair dealing justified relieving the contractor of a default termination); RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981) ("[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement").

*International Fidelity Ins. Co. v. United States,* 25 Cl.Ct. 469, 480 (1992). To be sure, a contractor is entitled to a fair evaluation of a response to a solicitation, to be treated fairly during contract performance and to a fair evaluation of contract performance prior to a termination. However, the duty of a contracting officer to accord a contractor fair treatment creates no binding obligation to exercise an option to extend a contract for additional years.

■■■ Plaintiffs asserting claims of bad faith must overcome the strong presumption that in the absence of clear, contrary evidence, public officials act conscientiously in the discharge of their duties. *Librach v. United States,* 147 Ct.Cl. 605, 612, 1959 WL 7633 (1959); *Torncello & Soledad Enterprises, Inc. v. United States,* 231 Ct.Cl. 20, 45, 681 F.2d 756, 770 (1982) (involving termination of a contract). As stated by the Supreme Court, albeit not in the context of a government contract case, "We generally accord government records and official conduct a presumption of legitimacy." *United States Dep't of State v. Rey,* — U.S. —, —, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991). Since good faith is presumed unless bad faith is demonstrated, the government is prevented only from engaging in actions motivated by a specific intent to harm the plaintiff." *Torncello,* 231 Ct.Cl. at 45, 681 F.2d at 770.

The difficult burden of proof for a plaintiff attempting to show that a government act was undertaken in bad faith has been outlined as follows:

> [i]t requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing. *Knotts v. United States,* 121 F.Supp. 630, 631, 128 Ct.Cl. 489, 492 (1954).

In the cases where the court has considered allegations of bad faith, the necessary 'irrefragable proof' has been equated with evidence of some *specific intent to injure the plaintiff.* Thus, in *Gadsden v. United States,* 78 F.Supp. 126, 127, 111 Ct.Cl. 487, 489-90 (1948), the court compared bad faith to actions which are 'motivated alone by malice.' In *Knotts, supra,* at 128 Ct.Cl. 500, 121 F.Supp. 636, the court found bad faith in a civilian pay suit only in view of a proven 'conspiracy ... to get rid of plaintiff.' Similarly, the court in *Struck Constr. Co. v. United States,* 96 Ct.Cl. 186, 222, 1942 WL 4411 (1942) found bad faith when confronted by a course of Governmental conduct which was 'designedly oppressive.' But in *Librach, supra,* at 147 Ct.Cl. 614, the court found no bad faith because the officials involved were not 'actuated by animus toward the plaintiff.'

*Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198-99, 543 F.2d 1298, 1301-02 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977) (emphasis & omission in original) (involving allegations of bad faith in contract administration). *See also P. Francini & Co. v. United States,* 2 Cl.Ct. 7, 11 (1983) (involving cancellation of an IFB). As stated by the United States Court of Appeals for the Federal Circuit, "Unsubstantiated suspicions and allegations [of bad faith actions] are not enough. The proof must be almost 'irrefragable.'" *Spezzaferro v. F.A.A.,* 807 F.2d 169, 173 (Fed.Cir.1986) (citations omitted). To demonstrate bad faith, specific instances of the government's ill will directed toward the plaintiff must be identified. *Haney v. United States,* 230 Ct.Cl. 148, 152, 676 F.2d 584, 586 (1982); *see, A–Transport North-*

*west Co. v. United States,* 27 Fed.Cl. 206 (1992) (granting motion for summary judgment on behalf of United States because allegations of bad faith were insufficiently supported). Plaintiff has failed to offer any proof that the government acted with bad faith or malice in failing to deliver the official CDRs until after the expiration of the contract.

■ Plaintiff alleges several specific acts of bad faith. First, plaintiff argues that because in its solicitation the government required bidders to base their bid on a five-year term, CCD had "a right to rely on the exercise of 'good faith' by the Government in the decision to extend the option years." The suggestion that the government cannot request responses to solicitations which call for options, without obligating itself to exercise those options, is nonsense. Furthermore, CCD presents no evidence which demonstrates that the government had a specific intent to injure the plaintiff when it decided not to exercise the option to renew the contract with the plaintiff.

Plaintiff also contends that the government exhibited bad faith toward CCD by failing to notify CCD of discrepancies in the operation of Fort Sill's sanitary landfill and failing to give CCD an opportunity to correct those deficiencies. Plaintiff bases this argument on allegations that CCD was not sent the CDRs detailing the problems at the landfill until October 10, 1989, ten days after the expiration of the original contract. CCD alleges that the government only issued the CDRs in hindsight in order to justify its failure to exercise its option to renew. It appears, however, that plaintiff did receive notice of the deficiencies at the landfill during a series of meetings between the contracting officer and CCD, which commenced in August 1989, well before the government decided not to extend CCD's contract. Moreover, defendant asserts that CCD received the CDRs after the expiration of the original contract because of paperwork processing, not because of any government desire to belatedly justify its failure to execute the option to renew. CCD does not present any evidence

to call into question the government's explanation, or any evidence to support plaintiff's allegation of bad faith. In addition, CCD must have known about some of the alleged deficiencies because it was CCD's own heavy equipment at the landfill which was not operational, causing the government to use its own equipment and personnel to operate the landfill on two occasions in July and September.

Plaintiff further alleges that the government acted in bad faith when the directorate of engineering and housing at Fort Sill refused to allow CCD to use a new system for refuse collection on the base. Affidavits filed by the government demonstrate that the contracting officer requested that CCD refrain from using its new collection system because of problems with trash blowing around the base. These problems required the government to assign additional personnel to pick up trash after CCD had assured the government that the new collection system would maintain the level of service and create no additional costs. There is no evidence in the record presented that the government made this refusal because of malice or prejudice against CCD. In fact, after negotiations, CCD was permitted to resume use of its new system. Furthermore, CCD was compensated for the period during which it was not allowed to use its new cost-saving equipment. Contrary to plaintiff's allegations, it appears from these events that the government, in fact, made efforts to deal fairly with CCD.

In sum, the plaintiff's contentions that the government failed to deal with CCD in good faith are unsubstantiated in the record before the court. When determining whether to extend CCD's contract, the contracting officer was entitled to consider CCD's past performance, even though the plaintiff has alleged that it performed its contract obligations in all respects. There is no indication that any improper factors influenced the contracting officer's decisions. Plaintiff has presented no evidence of malice on the part of the government, or animus toward CCD, to warrant a trial on the issue of bad faith. Summary judg-

ment, therefore, is appropriate in these proceedings.

## CONCLUSION

The court concludes that, as a matter of contract interpretation, the government was under no obligation to extend CCD's contract for additional years. The plain language of the contract indicates that the government had the unilateral right to refuse to exercise an option to extend the contract. The court also rejects plaintiff's assertion that the government dealt in bad faith with CCD. There is no evidence in the record of bad faith dealings by the government during the execution or performance of the contract, or as part of the decision not to exercise an option to extend the contract.

For the reasons stated above, the court, hereby, GRANTS the defendant's motion for summary judgment.

IT IS SO ORDERED.