**Phillip OZDEMIR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–432 C.**

United States Court of Federal Claims.

Nov. 9, 2009.

632

Phillip Ozdemir, Williamstown, MA, pro se Plaintiff.

Roger A. Hipp, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were Donald E. Kinner, Assistant Director, Jeanne E. Davidson, Director, and Tony West, Assistant Attorney General.

## OPINION

DAMICH, Judge.

This pre-award bid protest is before the Court on Defendant's Motion to Dismiss. According to Mr. Ozdemir's Complaint, a Department of Energy agency, Advanced Research Projects Agency—Energy ("ARPA–E"), solicited concept papers with the intent to provide research and development funding for highly promising energy-related technologies. Mr. Ozdemir claims that ARPA–E wrongfully refused to accept his concept paper for consideration. The Government argues that the solicitation did not relate to procurement and therefore the Court lacks jurisdiction to hear Mr. Ozdemir's protest. However, the Court concludes that its protest jurisdiction is not limited to procurement matters and therefore denies Defendant's Motion to Dismiss.

## I. Background

Mr. Ozdemir's protest stems from an April 27, 2009 solicitation for proposals to conduct Energy Department research and development with a financial assistance award from ARPA–E. Compl. ¶ 3; App. to Def.'s Mot. to Dismiss ("Def.'s App.") 1. The solicitation indicated that "ARPA–E is a new organization within the Department of Energy (DOE), created specifically to foster research and development (R & D) of transformational energy-related technologies.... ARPA–E will fund scientists and technologists to [develop] an immature technology that promises

to make a large impact on the ARPA–E Mission Areas...." *Id.* at 2.

The solicitation advised potential offerors that ARPA–E initially requested only "the kernel of your technical idea in the form of a concept paper." *Id.* at 3. After reviewing the concept papers, ARPA–E would inform offerors whether a full application based on their idea would be likely to receive funding. *Id.* For those that would ultimately receive funding, the solicitation contemplated three potential types of award instruments: grants, cooperative agreements, or technology investment agreements. *Id.* at 11.

The solicitation indicated that concept papers were due by June 2, 2009. *Id.* at 1. Apparently, applicants had to request an application control number by a certain date in advance of June 2, 2009. *See* App. to Compl., Ex. D. Mr. Ozdemir failed to timely request an application control number. *See* Compl. ¶ 12. When he submitted his concept paper on June 2, 2009, the contracting officer refused to accept it. *Id.* Following some efforts to resolve the matter within the Department of Energy, Mr. Ozdemir filed his Complaint in this Court.

## II. Discussion

### A. The Government's Motion to Dismiss

█ When the Government puts the Court's subject matter jurisdiction in question by moving to dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). In this case, the Government has questioned the Court's jurisdiction to hear Mr. Ozdemir's protest by asserting that the Court cannot adjudicate protests that do not concern procurement and that Mr. Ozdemir's Complaint does not pertain to procurement. Def.'s Mot. to Dismiss ("Def.'s Mot.") 1.

Mr. Ozdemir makes several arguments in opposition to the Government's motion. First, Mr. Ozdemir disputes the Government's contention that the solicitation does not involve procurement. Pl.'s Opp'n 5. In support of this argument, Mr. Ozdemir points out that within the solicitation itself, ARPA–E states that it will create a *"procurement* or financial assistance instrument that best manages the high risk inherent in this kind of" research and development. Def.'s App. 3 (emphasis added).

The Government discounts the importance of the word "procurement" appearing within the solicitation. "While it is true that [the] word 'procurement' appears one time in the introduction to the solicitation, ... the word does not appear in the section that identifies the types of award instruments to be issued," the Government replies. Def.'s Reply 6. According to the Government, the "Court does not possess jurisdiction to entertain this bid protest, because the three potential award instruments identified in the [solicitation]— grants, cooperative agreements, and technology investment agreements—are not procurement contracts." Def.'s Mot. 5.

Citing the Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C. §§ 6301–6308, the Government argues that procurement contracts are distinguishable from the types of research and development instruments contemplated here. Def.'s Mot. 4. According to that Act, executive agencies are to use procurement contracts when (1) "the principal purpose of the instrument is to acquire ... property or services for the direct benefit or use of the United States Government," or (2) when "the agency decides in a specific instance that the use of a procurement contract is appropriate." 31 U.S.C. § 6303.[1] Grant agreements shall be used when "the principal purpose of the relationship is to transfer a thing of value ... to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring ... property or services," and "substantial involvement is not

---

1. *See also* 41 U.S.C. § 402(2) ("The term 'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."); *Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1345–46 (adopting § 402(2)'s definition).

expected between the executive agency and the ... recipient...." 31 U.S.C. § 6304. Cooperative agreements are also for use in transferring something of value to carry out a public purpose but where "substantial involvement is expected between the executive agency and the ... recipient." 31 U.S.C. § 6305. The final instrument contemplated in the solicitation, a technology investment agreement, exists in two forms. A technology investment agreement can either be a "type of cooperative agreement with more flexible provisions," 10 C.F.R. § 603.105(a)(1), or "an assistance transaction other than a cooperative agreement," 10 C.F.R. § 603.105(a)(2).

As to the latter version of technology investment agreements, the Government attempts to assuage any concerns that these could qualify as procurement contracts by suggesting that there is no reason to believe that Mr. Ozdemir was competing for one of these. Def.'s Mot. 5 n. 2. Of course, Mr. Ozdemir disputes that view of the facts and assures the Court that he "was open to all types of agreements." Pl.'s Opp'n 14. In this case, the Court need not decide whether this solicitation concerned a proposed procurement because the Court is persuaded by Mr. Ozdemir's alternative argument that a connection to a procurement or proposed procurement is not always required. Pl.'s Opp'n 22.

## B. Jurisdiction Over Non–Procurement Protests

The Tucker Act, 28 U.S.C. § 1491, governs the Court's jurisdiction. Section 1491(b)(1) specifically addresses jurisdiction in bid protests. That provision provides in part:

> [T]he Unite[d] States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). Despite the hexadic use of "or" in a seemingly expansive jurisdictional grant, the Government focuses on the phrase "in connection with a procurement or a proposed procurement," taking the position that the terminal phrase qualifies the entire sentence. See Def.'s Mot. 3. In the Government's view, the Court cannot exercise bid protest jurisdiction unless the protest is connected to a procurement or proposed procurement. Id.

Mr. Ozdemir—and some United States Court of Federal Claims judges—read the statute differently. They understand "in connection with a procurement or a proposed procurement" to qualify only the seven words preceding it: "any alleged violation of statute or regulation." 28 U.S.C. § 1491(b)(1). Thus, the phrase in question operates to limit challenges alleging violations of statutes or regulations to only those violations occurring in connection with a procurement or proposed procurement. Under this interpretation, the earlier clauses supply separate and broader bases for jurisdiction, which do not require a procurement connection. See Red River Holdings, LLC v. United States, 87 Fed.Cl. 768, 794 (2009) ("the initial and broader categories enumerated"). For example, an interested party can challenge "a solicitation by a Federal agency for bids or proposals for a proposed contract," regardless of whether that solicitation concerned procurement. 28 U.S.C. § 1491(b)(1).

The Court agrees with Mr. Ozdemir. Jurisdiction under § 1491(b)(1) for protests challenging federal agency solicitations is not limited to procurement matters. The rule of last antecedent along with the history § 1491 firmly support Mr. Ozdemir's interpretation. Section 1491(b)(1) provides the Court with jurisdiction over "an action by an interested party objecting to [1] a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or [2] the award of a contract or [3] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); accord OTI Am., Inc. v. United States, 68 Fed.Cl. 108, 113 (2005).

Arguing against this construction of § 1491(b)(1), the Government asserts that four cases support its own interpretation:

*Rick's Mushroom Service, Inc. v. United States,* 76 Fed.Cl. 250 (2007), *aff'd,* 521 F.3d 1338 (Fed.Cir.2008); *Catholic University of America v. United States,* 49 Fed.Cl. 795 (2001); *Resource Conservation Group, LLC v. United States Department of the Navy,* 86 Fed.Cl. 475 (2009); and *R & D Dynamics Corp. v. United States,* 80 Fed.Cl. 715 (2007), *aff'd per curiam,* 309 Fed.Appx. 388 (Fed. Cir.2009). Def.'s Reply 2 ("Mr. Ozdemir's interpretation of the Tucker Act is contrary to at least four decision of this Court.") However, the Court finds that none of these cases represent a clear endorsement of the construction the Government urges.

*Rick's Mushroom Service* is irrelevant because the issue in that case was whether a cooperative agreement qualifies as a procurement contract for purposes of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613. *See Rick's Mushroom Serv.,* 76 Fed.Cl. at 257–58. Thus, that case does nothing to advance the Government's argument that the Court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1) is limited to procurements and proposed procurements.

On its surface, *Catholic University of America* supports the Government's position. In that case, the plaintiff university challenged a government solicitation seeking proposals for development and lease of a property tract adjacent to the university. *Catholic Univ. of Am.,* 49 Fed.Cl. at 796. The court agreed that § 1491 governed the procurement process and that the phrase "in connection with a procurement or proposed procurement" modifies each of the phrases preceding it. *Catholic Univ. of Am.,* 49 Fed. Cl. at 799. But the strength of this case in support of the Government's position is lessened by the fact that the court decided that, although the entire provision addressed the procurement context, the word "procurement" had a significantly broader meaning than that urged by the Government. *Id.* "We think it reasonable—indeed, necessary—to read the word 'procurement' in section 1491 not in the limited sense of referring just to the Government's acquisition of supplies or services, but rather as a more general reference to the process by which the Government endeavors to fulfill any of

its needs through the mechanics of a solicitation and contract award," the court explained. *Catholic Univ. of Am.,* 49 Fed.Cl. at 800. The court went on to conclude that it did have jurisdiction under § 1491 to hear the plaintiff's protest. *Catholic Univ. of Am.,* 49 Fed.Cl. at 800.

The protestor in *Resource Conservation Group* similarly sought to challenge a Government solicitation to lease out federal land. 86 Fed.Cl. at 477. After considering the parties' arguments, that court concluded that § 1491(b)(1) did not grant it jurisdiction to adjudicate "bid protests concerning land leases where the Government is the lessor." *Res. Conservation Group,* 86 Fed.Cl. at 486. However, in that case the Government had advised the court—in contrast to its current position—that the initial two clauses *do not* require a connection to a procurement or proposed procurement. *See id.* at 482–83; Defendant's Reply Brief ("*RCG* Reply") at 3–4, *Res. Conservation Group, LLC v. U.S. Dep't of the Navy,* 86 Fed.Cl. 475 (2009) (No. 08–768C). In its Reply brief in *Resource Conservation Group,* the Government argued that the plaintiff was incorrect in suggesting that a disappointed bidder for a non-procurement contract would be without recourse in the absence of implied-in-fact jurisdiction. *Id.* The Government stated, "Although parties may debate the meaning of the final clause of Section 1491(b)(1), which grants this Court jurisdiction over violations of statutes or regulations in connections [sic] with proposed procurements, the other two clauses are not so limited." *RCG* Reply at 3. The Government went on to explain, "the Court of Federal Claims has recognized that section 1491(b) confers upon the Court jurisdiction over three types of actions that are commonly termed bid protests." *RCG* Reply at 3 (quoting *OTI Am., Inc.,* 68 Fed.Cl. at 113) (internal quotation marks omitted). The Government then quoted the following passage from the *OTI America* decision:

> In the words of the statute, the first is "an action ... objecting to the solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award ... of a contract," *i.e.,* a pre-award protest. The second is "an action ... objecting ... to ... the award of a contract,"

*i.e.,* a post-award protest. The third is "an action ... objecting ... to ... any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

*OTI Am., Inc.,* 68 Fed.Cl. at 113 (internal citations omitted). "Thus, bidders for non-procurement contracts may bring suit under either of the first two clauses, challenging the solicitation either pre-or post-award," the Government advised the *Resource Conservation Group* court. RCG Reply 3–4 (citing *Colo. Dep't of Human Servs. v. United States,* 74 Fed.Cl. 339, 348 (2006)). The Government's argument regarding the proper construction of § 1491 became an element of the court's decision. *See Res. Conservation Group,* 86 Fed.Cl. at 482–83. Considering the contradictory argument the Government made in *Resource Conservation Group,* citation to that case detracts from its current position at least as much as it might support it.

Finally, the Government cites *R & D Dynamics* in support of its current position. 80 Fed.Cl. 715. However, it is not at all clear that the *R & D Dynamics* court was actually asked to rule on the precise question now before this Court. In *R & D Dynamics,* the plaintiff brought a post-award bid protest after not being selected for a research and development award as part of the U.S. Army's Small Business Innovation Research program. *Id.* at 716. The court decided that it lacked jurisdiction because the award was not a "procurement" within the meaning of the Tucker Act. *Id.* at 720. But there is no indication that the *R & D Dynamics* court considered the more basic question of whether a procurement is required in the first place. The court's discussion regarding jurisdiction begins by identifying the plaintiff's argument—that the award at issue was indeed a procurement. *Id.* at 719 ("Plaintiff argues that the court has subject matter jurisdiction under 28 U.S.C. § 1491(b) 'because the SBIR Phase II award at issue here is a procurement.' "). Accordingly, the decision contains substantial analysis of whether a procurement was at issue. However, it does not devote any significant attention to the more preliminary question now before this Court of whether a procurement is even

required. Thus, it is not clear that the *R & D Dynamics* court was asked to decide the precise question now before this Court. None of the cases the Government relies on offers definitive support for its argument that the Court's protest jurisdiction is limited to procurement matters. Moreover, the Government's interpretation does not comport with the normal rules of textual construction or the history of § 1491.

## C. Last Antecedent Rule

■ In contrast to the tenuous support offered for the Government's interpretation, Mr. Ozdemir's interpretation of § 1491 finds clear support in *Red River Holdings, LLC.* 87 Fed.Cl. at 795. In that case, the court determined that the " § 1491(b) jurisdictional grant concerning solicitation for bids or proposals for a proposed contract or a proposed award or award of a contract covers both procurement contracts and non-procurement contracts." *Id.* "[O]bjections to federal solicitations for proposed contracts or objections to proposed or actual awards of contracts are cognizable in this court and are not limited to federal 'procurement' of goods or services," *Red River Holdings* concluded. *Id.* The Government makes little attempt to distinguish *Red River Holdings,* instead simply arguing that the "Court should follow the more persuasive reasoning of" the cases it cited, which the Court discussed above. Def.'s Reply 4.

■ The Court finds the reasoning espoused in *Red River Holdings* persuasive. In reaching its construction of § 1491(b)(1), *Red River Holdings* relied on the last antecedent rule. 87 Fed.Cl. at 794–95. As explained by the Federal Circuit, that rule provides that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence for purposes of statutory construction.' " *Anhydrides & Chems., Inc. v. United States,* 130 F.3d 1481, 1483 (Fed.Cir.1997) (quoting 2A C. Dallas Sands, *Sutherland Statutory Construction* § 47.33 (4th

ed.1984)). "In contrast, '[w]hen a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents.'" *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1336 (Fed.Cir.2008) (quoting *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir.1999)). Applying that rule to § 1491(b)(1), the lack of punctuation indicates that "in connection with a procurement or proposed procurement" qualifies only the phrase that precedes it ("any alleged violation of statute or regulation"), not the entire sentence. Still, the Federal Circuit was careful to note that "while the meaning of a statute will typically heed the commands of its punctuation, the doctrine of the last antecedent and its corollary, the rule of punctuation, are more guidelines than absolute rules." *Finisar Corp.*, 523 F.3d at 1336 (internal citations omitted).

### D. History of § 1491

In this case, the history of § 1491 confirms that it lies among the typical set where the meaning of the statute does "heed the commands of its punctuation." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). Because the amendments made to § 1491 in 1996 did not narrow the scope of protests over which the United States Court of Federal Claims previously exercised jurisdiction, and the court previously heard protests concerning both procurement and non-procurement matters, it is clear that the language added in § 1491(b)(1) requiring a procurement nexus only qualifies the final basis for jurisdiction, i.e., violations of a statute of regulation.

The Federal Circuit chronicled the "long and complicated" history of judicial review of bid protests in *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1078–80 (Fed.Cir.2001). In 1940, the Supreme Court found that protestors lacked standing to bring challenges in federal courts. *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 126, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). Following that case, a predecessor to the United States Court of Federal Claims heard protests on the theory that an implied contract between

the government and offerors required the government to fairly consider offerors' bids. *See Emery Worldwide Airlines, Inc.*, 264 F.3d at 1078 (citing *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956)). Meanwhile, in 1970, the District of Columbia Circuit determined that the 1946 enactment of the Administrative Procedure Act, Pub.L. No. 79–404, 60 Stat. 237 (1946) (codified as amended at 5 U.S.C. §§ 551–559), now provided for review of procurements in federal district courts. *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 876 (D.C.Cir.1970).

Compared to *Scanwell* review in district courts, the scope of review by the United States Court of Federal Claims and its predecessor courts was limited. Before 1982, review in what is now the Court of Federal Claims "was narrow and an aggrieved party was typically limited to monetary relief." *Emery Worldwide Airlines*, 264 F.3d at 1078. Although the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 40 (1982), allowed the court to fashion declaratory and injunctive relief, it had jurisdiction only to hear cases brought before a contract was awarded. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983) (en banc); *see also Lion Raisins, Inc. v. United States*, 52 Fed.Cl. 115, 117–18 (2002) ("court's jurisdiction over bid protest claims was limited to pre-award protests").

The Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–76 (1996), expanded the jurisdiction of the Court of Federal Claims. For a period, the ADRA allowed "both federal district courts and the Court of Federal Claims to hear 'the full range of cases previously subject to review in either system.'" *Emery Worldwide Airlines*, 264 F.3d at 1079 (quoting 142 Cong. Rec. S11849 (daily ed. Sept. 30, 1996) (statement of Sen. Levin)). However, a sunset provision terminated the federal district courts' jurisdiction in 2001, eventually channeling all judicial review of bid protests to the United States Court of Federal Claims. *See id.*

The Government argues that "[t]here is no reason to believe that Congress intended for

section 1491(b) to expand the Court's bid protest jurisdiction to include challenges to contracts not involving procurement." Def.'s Reply 4. But the Government fails to explain its premise that allowing non-procurement protests would have meant an expansion of the Court's jurisdiction. To the contrary, the United States Court of Federal Claims and its predecessors have historically exercised jurisdiction over both procurement and non-procurement protests. *See Red River Holdings, LLC,* 87 Fed.Cl. at 795 ("As the court observed in *Catholic University of America v. United States,* ... prior to the ADRA, this court's jurisdiction extended to both claims arising out of the government's disposition of assets as well as the acquisition of supplies or services 'irrespective of whether the Government was engaged in the acquisition or the disposition of property.' "); *Wetsel–Oviatt Lumber Co. v. United States,* 40 Fed.Cl. 557 (1998) (bid protest concerning cancellation of government timber sale). If the ADRA amendments were to have left the Court without jurisdiction over non-procurement protests, the Court's jurisdiction would have been narrowed, not expanded. As the *Red River Holdings* court observed, there is no indication that Congress narrowed the Court's protest jurisdiction in the ADRA. 87 Fed.Cl. at 794 ("no indication that Congress intended to remove jurisdiction over protests concerning any category of government contracts.").

The shift in statutory language does not indicate that the scope of protest jurisdiction was narrowed. Prior to the 1996 ADRA amendments, the former 28 U.S.C. § 1491(a)(3) had provided:

> To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

28 U.S.C. § 1491(a)(3) (1994) (repealed in 1996 by the ADRA's amendments to the Tucker Act).

The ADRA repealed the above paragraph (a)(3), and inserted the language now codified at § 1491(b)(1). *See Lion Raisins, Inc.,* 52 Fed.Cl. at 117–18. Comparison of the now-repealed § 1491(a)(3) to the current § 1491(b)(1) does not suggest that the scope of jurisdiction was narrowed. To the contrary, the court's jurisdiction was expanded. As the bill's sponsor explained at the time it was being considered:

> The amendment deals with the issue of bid protest jurisdiction in the Federal district courts and the U.S. Court of Federal Claims. The amendment will expand the bid protest jurisdiction of the Court of Federal Claims.... Currently, the Court of Federal Claims only has jurisdiction over bid protests which are filed before a contract award is made. My amendment provides for both pre-and post-award jurisdiction.

142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (Statement of Senator Cohen). The ADRA's expansion of the Court's jurisdiction was further explained in *Lion Raisins:*

> As a result [of the pre-ADRA statutory scheme], the Court of Federal Claims could not remedy procurement violations that affected all bidders equally, and could not review the legality of solicitation provisions, even though they could be challenged in district courts. Congress amended the Tucker Act to remedy this discrepancy by removing bid protest remedies from section 1491(a) and providing the Court of Federal Claims with a new, and independent, basis for bid protest jurisdiction.

*Lion Raisins, Inc.,* 52 Fed.Cl. at 117–18 (internal citations omitted).

The court is aware of nothing that would suggest that the ADRA carved away any category of protests over which the Court had previously held jurisdiction, and the Government has made no such showing. The Court's jurisdiction would not have been limited to procurement protests before the ADRA, and there is no reason to believe that to be the case now. The Court cannot find a persuasive basis, either in the statute or cases, for the Government's argument that the Court's protest jurisdiction is limited to

procurement matters. To the contrary, the Tucker Act, as amended by the ADRA, confers jurisdiction over "an action by an interested party objecting to [1] a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or [2] the award of a contract or [3] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

### E. The ARPA–E Solicitation

■ If Mr. Ozdemir is "objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award," the Court has jurisdiction regardless of whether a procurement nexus exists. 28 U.S.C. § 1491(b)(1). There can be no question that Mr. Ozdemir is objecting to a solicitation by a federal agency. The relevant document begins, "This is the first solicitation for the Advanced Research Projects Agency—Energy (ARPA–E). ARPA–E is a new organization within the Department of Energy." Def.'s App. 2.

However, the Government reformulates its argument that § 1491 requires a procurement connection by arguing that the solicitation did not concern a proposed contract. According to the Government, "the word 'contract' as used in section 1491(b) refers to procurement contracts, and not to grant agreements or cooperative agreements." Def.'s Reply 5. The Government does not cite any case or statutory provision in direct support of its assertion that a "contract" for purposes of the Court's jurisdiction does not include certain financial assistance agreements. Rather, the Government merely suggests that at the time the ADRA was passed, Congress "was aware" that the Federal Grant and Cooperative Agreement Act referred to certain instruments as "procurement contracts" and others as "grant agreements" and "cooperative agreements." *Id.* Therefore, the Government reasons, the use of the word "contract" in § 1491(b)(1) must not include instruments such as grants, cooperative agreements, or technology investment agreements because elsewhere in the U.S. Code those instruments are addressed separately from procurement contracts.

The Court is not convinced. A contract is routinely defined as an agreement. *See Black's Law Dictionary* 365 (9th ed.2009) (defining contract as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law."); Restatement (Second) of Contracts § 1 cmt. a (1979) (" 'contract' [is] .... sometimes used as a synonym for 'agreement' "). Even within the U.S. Code, while the Federal Grant and Cooperative Agreement Act may distinguish between procurement contracts and other types of agreements, elsewhere "contract" is defined to specifically include grants and other agreements. 42 U.S.C. § 5908(m)(2) ("the term 'contract' means any contract, grant, agreement, understanding, or other arrangement, which includes research, development, or demonstration work"). By itself, the word "contract" encompasses a wide range of formal agreements, including the ones proposed here. The Court finds the Government's argument that Mr. Ozdemir is not challenging a solicitation for a proposed contract within the meaning of § 1491(b)(1) unavailing.

Nonetheless, even if the Court were to accept the Government's claim that there was not a proposed contract at issue here, the Court would still have jurisdiction to hear Mr. Ozdemir's objection "to a proposed award." 28 U.S.C. § 1491(b)(1). The solicitation unquestionably contemplates an award, making several references to a prospective "award" and containing sections addressing both "Award Information" and "Award Administration Information." Def.'s App. 11–12, 35–36 ("APRA–E anticipates awarding grants, cooperative agreements, or Technology Investment Agreements."). The Court has jurisdiction under § 1491(b)(1) to hear Mr. Ozdemir's protest, regardless of whether it concerns a procurement.

### III. Conclusion

Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.