GOVERNMENT TECHNICAL
SERVICES LLC.,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–630L.

United States Court of Federal Claims.

E–Filed: Dec. 29, 2009.[1]

---

1. The court issued a protective order in the above-captioned case, filed September 28, 2009, docket number (dkt. no.) 7. This opinion does not make public any confidential or trade information, and does not fall within the scope of the protective order.

Howell Roger Riggs, Huntsville, AL for plaintiff.

Lauren A. Weeman, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Alan J. Lo Re, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Charles E. Williams, Office of Counsel, United States Army Corps of Engineers, Huntsville, AL, of counsel.

*OPINION*

HEWITT, Chief Judge.

This is a post-award bid protest brought by Government Technical Services (GTS), a successful offeror for United States Army Corps of Engineers (Corps, government or

defendant) Contract W 912DY–05–D–0020 (Contract).[2] Before the court are plaintiff's Verified Complaint And Petition for Preliminary And Permanent Injunction (plaintiff's Complaint or Compl.) ¶ 1, ¶ 4 n. 2, docket number (dkt. no.) 1, filed September 28, 2009; Plaintiff's Memorandum in Support of Motion for Preliminary and Permanent Injunction (Pl.'s Mem.) dkt. no. 2, filed September 28, 2009;[3] Defendant's Motion to Dismiss (Def.'s Mot.), dkt. no. 16, filed October 14, 2009; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Pl.'s Resp.), dkt. no. 19, filed October 21, 2009; and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (Def.'s Reply), dkt. no. 22, filed October 28, 2009. The court also has before it a copy of the Administrative Record (AR) filed by defendant on October 5, 2009, dkt. no. 13.[4]

I.  Background

On January 4, 2005 the Corps awarded the Contract to Government Technical Services (GTS). Def.'s Mot. 3. Upon winning the Contract, GTS became eligible to compete against other pre-qualified contractors for task orders to provide Electronic Security Systems procurement and installation services (ESS Services) and delivery of security and force protection measures to the Electronic Technology Systems Center, Engineering and Support Center in Huntsville, Alabama. Def.'s Mot. 3. The Contract was a multiple award contract with multiple options. Compl. ¶ 4.

Plaintiff's Complaint characterizes the government's failure to exercise an option to extend the Contract after the expiration of the initial term of the Contract as an action taken "in connection with a procurement"

---

**2.** In briefing, the parties refer to Contract W 912DY–05–D–0020, the identifying number that is used on the first page of the Contract and most of the interior pages. *See* Administrative Record (AR) 1, 54–70, 306–543. A number of the interior pages of the contract use W 912DY05–D–0014 as the identifying number. *See* AR 2–53. Neither party has mentioned the discrepancy and it does not appear to be in any way material to the dispute.

**3.** Plaintiff's Motion for Preliminary and Permanent Injunction (Pl.'s Mot.) is contained within

plaintiff's Verified Complaint And Petition for Preliminary And Permanent Injunction (plaintiff's Complaint or Compl.), file September 28, 2009, dkt. no. 1.

**4.** A corrected version of the AR was filed on October 23, 2009, dkt. no. 21. The corrections to the AR are not material to the resolution of this dispute and all citations in the opinion to the AR are to the AR filed October 5, 2009, dkt. no. 13.

under 28 U.S.C. § 1491(b)(1) (2006). Compl. ¶ 34. Defendant has moved to dismiss the Complaint for lack of jurisdiction on the grounds that the government's decision whether to exercise an option is not a matter which is within the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims or this court) under 28 U.S.C. § 1491(b). *See* Def.'s Mot. 2. The Contract states that "[t]here is no guarantee that any or all options will be exercised on any or all of the resultant contracts." AR 2. The Contract incorporates Federal Acquisition Regulation (FAR) provision 48 C.F.R. 52.217–9 (2009), which governs the extension of the term of the contract through the exercise of options. The extension provision of the contract states:

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days of the current contract year; provided that the Government gives the Contractor a preliminary notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 5 years.

AR 50. It is undisputed that the extension option was not exercised by the Corps as to plaintiff's Contract. The Contract expired on January 3, 2009. *See* Compl. ¶ 22.

Under the Contract, the Corps awarded five task orders to GTS between February 5, 2007 and the expiration of the contract, January 3, 2009. *See id.;* Def.'s Mot. 4–13. A dispute exists between the parties regarding whether or not the task orders were completed successfully. *See* Compl. ¶¶ 4, 7–14; Def.'s Mot. 4–11. Plaintiff alleges that GTS was treated unfairly by the Corps Contracting Officer Representative (COR) during the performance of Task Order 4 which culminated with the government's bad faith decision not to exercise the renewal option. *See* Compl. ¶¶ 8–14, 36–37. Plaintiff alleges that the COR's "unreasonable and arbitrary position regarding performance" contributed to delays in the completion of Task Order 4. Compl. ¶ 9. Plaintiff also asserts that the COR was rarely available for consultation because of his many scheduling conflicts, further delaying the progress of Task Order 4. Compl. ¶¶ 10–11. Plaintiff maintains that meetings regarding the progress of Task Order 4 between GTS and the Corps were marred by the COR's untrue "allegations of poor performance [by GTS]" to the Contracting Officer (CO) and other Corps officials. Compl. ¶ 16. GTS contends that, as a result of the bad faith misrepresentations by the COR, it was excluded from competition for task orders, with the result that its contract terminated instead of being extended under the Contract's option provision. Compl. ¶¶ 36–37. It is on this claim of bad faith in the management of task orders that plaintiff bases its Administrative Dispute Resolution Act (ADRA) claim under 28 U.S.C. § 1491(b). *See* Compl. ¶ 3.

The Complaint, filed by GTS on September 28, 2009, asserts that it is a bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491, and, in particular, that the option provision of the Contract is within the ADRA jurisdiction of this court. Compl. ¶ 3; Pl.'s Resp. 2. Section 12 of the ADRA added jurisdiction over post-award bid protests to the Tucker Act. Pub.L. No. 104–320 (1996), 110 Stat. 3870, 3874–76 (1996); 28 U.S.C. § 1491(b)(1). Plaintiff's argument relies in principal part on language in a case before the United States Court of Appeals for the Federal Circuit (Federal Circuit), *Distributed Solutions, Inc. v. United States (Distributed Solutions)*, 539 F.3d 1340 (Fed.Cir. 2008), stating that " 'procurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout." *Id.* at 1345 (citing 41 U.S.C. § 403(2) (2006)).

Defendant's Motion to Dismiss argues that plaintiff has failed to state a claim within the jurisdiction of the court pursuant to the

Rules of the Court of Federal Claims (RCFC) 12(b)(1) or has failed to state a claim on which relief may be granted pursuant to RCFC 12(b)(6). Def.'s Mot. 1, 13, 24. Because the court finds that it is without jurisdiction to hear plaintiff's claim under RCFC 12(b)(1), it does not address defendant's motion under RCFC 12(b)(6).

## II. Discussion

### A. Tucker Act Jurisdiction

■■■ The United States "is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Any waiver of sovereign immunity by the government must be "strictly construed in favor of the United States." *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). The jurisdiction of the Court of Federal Claims is largely defined by the Tucker Act. *Int'l Mgmt. Servs., Inc. v. United States (Int'l Mgmt.),* 80 Fed.Cl. 1, 4–5 (2007) (citing 28 U.S.C. § 1491(b)). In particular, the Tucker Act waives sovereign immunity for claims against the United States in bid protests:

> The Unite[d] States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

*See* 28 U.S.C. § 1491(b)(1). The relief available under the Tucker Act is "any ... that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." *Id.* § 1491(b)(2). The issue before the court is whether its bid protest jurisdiction encompasses the Corps' decision not to exercise its option to extend the Contract with GTS.

### B. Legal Standard for Motion to Dismiss under RCFC 12(b)(1)

■■■ When considering a motion under RCFC 12(b)(1) to dismiss for lack of subject matter jurisdiction, the court is generally " 'obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor.' " *FFTF Restoration Co. v. United States (FFTF Restoration),* 86 Fed.Cl. 226, 235 (2009) (quoting *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)); *Int'l Mgmt.,* 80 Fed.Cl. at 4 (2007). However, only uncontroverted factual allegations are accepted as true for purposes of resolving the motion. *See Williams v. United States,* 71 Fed.Cl. 194, 197 (2006).

■■■ In evaluating a motion under 12(b)(1), the court " 'may find it necessary to inquire into jurisdictional facts that are disputed.' " *FFTF Restoration,* 86 Fed.Cl. at 235 (quoting *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)). In such a case, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). RCFC 12(h)(3) requires that the court dismiss a case if the court determines "at any time that it lacks subject-matter jurisdiction." RCFC 12(h)(3); *see Williams v. United States,* 71 Fed.Cl. 194, 197 (2006) (citing *Scheuer v. Rhodes,* 416 U.S. at 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *Int'l Mgmt.,* 80 Fed.Cl. at 4.

### C. No Jurisdiction of GTS's Claim as a Bid Protest Action

#### 1. Tucker Act Jurisdiction

The Court of Federal Claims has jurisdiction to adjudicate bid protest claims pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1):

> [The Court of Federal Claims has] jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract

or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement[;] ... without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).

GTS brought this claim as a bid protest in order to challenge the Corps' decision not to exercise an option to extend its indefinite delivery, indefinite quantity, multiple award task order contract (IDIQ MATOC). *See* Compl. ¶¶ 4, 34, 38, 40. GTS argues that it is a disappointed bidder and that this case is properly within the jurisdiction of the Court of Federal Claims because the failure to exercise an option to extend a contract fits squarely within the terms of the ADRA. *See* Compl. ¶¶ 4, 34. In particular, plaintiff argues that the determination not to extend a contract is within the broad definition of procurement adopted by the Federal Circuit. Pl.'s Resp. 2 (quoting *Distributed Solutions*, 539 F.3d at 1345 (stating that the term procurement "include[s] all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout")).

2. The Government's Failure to Exercise an Option is Governed by the CDA and is Not a Bid Protest Action

▮ Defendant argues that the claim is improperly before the court because the claim is not a bid protest but a dispute over the exercise of an option on an existing contract which requires that it be brought under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (2006). Def.'s Mot. 15–16. The government points out that defendant has not complied with the CDA requirement that an aggrieved contractor file a written claim with the CO, who must then issue an unfavorable final decision, before a contractor may file a claim with the court. *See* U.S.C. § 605(a); Def.'s Mot. 16–17 (describing the administrative exhaustion requirements of the CDA). A claim substantially similar to

GTS's claim against the government here was brought by the plaintiff in *Continental Collection & Disposal, Inc. v. United States (Continental)*, 29 Fed.Cl. 644 (1993). Like GTS, the plaintiff in *Continental* claimed that the government had acted in bad faith by refusing to exercise a discretionary renewal option under its contract. *Continental*, 29 Fed.Cl. at 648, 651.

The *Continental* court dismissed a claim brought by Continental under 28 U.S.C. § 1491(b)(1) because Continental had failed to pursue administrative remedies under the CDA before filing its claim with the court. *Id.* at 648.[5] Similarly, because GTS failed to file a claim with the CO before filing its claim with this court, this court does not have jurisdiction over GTS's claim. *See Alliant Techsys., Inc. v. United States*, 178 F.3d 1260, 1264 (Fed.Cir.1999) ("[T]he CDA grants jurisdiction to the Court of Federal Claims ... over a contractor's request for relief only when the appeal or action is based on a qualifying claim filed by the contractor and a final decision by the contracting officer."); *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995) (en banc). Pursuant to the CDA, "[a] claim by a contractor shall be in writing...." 41 U.S.C. § 605(a). Further, for contractor claims of $100,000 or less the CO is required to "render a decision within 60 days of the request." 41 U.S.C. § 605(c)(1). For claims greater than $100,000, the contractor must "certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, [and] that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." *Id.* When deciding claims exceeding $100,000, the CO must, within sixty days of receipt of a certified claim, issue a decision or notify the contractor of the time within which a decision will be issued. *Id.* § 605(c)(2)(A)-(B). The CO's decision "shall be final and conclusive ... unless an appeal or suit is timely commenced as authorized by this chapter." *Id.* § 605(b). If GTS were to file a written claim

---

5. The court in *Continental Collection & Disposal, Inc. v. United States (Continental)*, 29 Fed.Cl. 644 (1993) dismissed plaintiff's claim without prejudice. *Continental*, 29 Fed.Cl. at 648. Continental then submitted its claim to the contracting officer (CO) and, after the claim was denied, filed a new complaint. *Id.*

with the CO within six years after the accrual of the claim and that claim were denied, this court would have jurisdiction to entertain a timely appeal of the denial. *See id.* §§ 605, 609; *see also Continental,* 29 Fed.Cl. 644, 648.

In its Response, plaintiff adds to the bad faith argument articulated in its Complaint an acknowledgment of the existence of the CDA; however, plaintiff argues that it is not obligated to meet the requirements of the CDA because its claim finds independent jurisdiction in the Tucker Act as amended by the ADRA. *See* Pl.'s Resp. 5 (citing *FFTF Restoration,* 86 Fed.Cl. at 240–41). *Compare* Compl. ¶¶ 34, 36, *with* Pl.'s Resp. 3. Plaintiff cites the government's acknowledgment that a bad faith claim is cognizable by this court as evidence that this court's subject matter jurisdiction has been established for its bad faith claim. Pl.'s Resp. 1–2 (stating that "the [g]overnment admits that such [a bad faith] claim is cognizable in this [c]ourt") (citing Def.'s Mot. 15 ("[A] contractor, can, however challenge the government's failure to exercise an option by alleging that the failure was in bad faith.")). Plaintiff further states that the "[g]overnment's analysis misses this basic point, and seeks to argue GTS's claim on the merits [a subject] ... not appropriate in the context of a motion to dismiss...." Pl.'s Resp. 2.

Plaintiff appears to have misunderstood the government's argument. Defendant does not suggest that the case should be resolved on its merits during the adjudication of the motion to dismiss. To the contrary, defendant argues that the claim, involving as it does an allegation of bad faith concerning an existing contract, must be decided under the CDA. Def.'s Reply 2–3; *see Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Ex parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868)) ("Without jurisdiction the court cannot proceed at all.... Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Defendant recognizes the possibility that plaintiff could pursue a claim based on the allegation

that it was treated unfairly under the Contract. Def.'s Mot. 15 (citing *Hi–Shear Tech. Corp.,* 53 Fed.Cl. 420, 436 (2002); *Dangfeng Shen Ho v. United States (Dangfeng),* 49 Fed.Cl. 96, 107 (2001) *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002)). However, the administrative procedures set out in the CDA must be followed prior to filing such a claim with the court. *See* 48 C.F.R. § 52.233–1(d)(1).

Plaintiff argues that it is entitled to choose between the CDA and the ADRA as a jurisdictional basis for an action based on the government's failure to exercise an option on an existing contract. Pl.'s Resp. 3 ("GTS's claim does not have to satisfy the CDA, when it can independently find jurisdiction in the Tucker Act based upon an alleged violation in connection with a procurement or a proposed procurement."). The court disagrees. While the Federal Circuit set forth an expansive definition of the term "bid protest" in *Distributed Solutions,* that court also recognized limits to the scope of bid protest jurisdiction and noted that the CDA was not an "alternative administrative remedy, available at the contractor's option." *Distributed Solutions,* 539 F.3d at 1345–46 ("Therefore the phrase, 'in connection with a procurement or proposed procurement,' [28 U.S.C. § 1491(b)(1)] by definition involves connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.' "). The Federal Circuit has made it crystal clear that the CDA is the "exclusive mechanism" for the resolution of disputes arising, as here, in contract management. *See Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed.Cir.1995) ("When the Contact Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contact Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option.").

The plaintiffs in *Distributed Solutions* established that their case was within the court's bid protest jurisdiction because they were "prospective bidders [who] ... submitted qualifying proposals ... and ... were prepared to submit bids pursuant to the anticipated Request for Quotation (RFQ) or Request for Proposal (RFP)...." *Distribut-*

*ed Solutions*, 539 F.3d at 1345. In contrast, GTS was not a "prospective bidder" because the decision to exercise the option or not was made by the government concerning an existing contract without a competitive process, Def.'s Mot. 20 n. 10, and GTS cannot properly be characterized as a prospective bidder analogous to the plaintiffs in *Distributed Solutions*. *See Distributed Solutions*, 539 F.3d at 1345 (requiring that a bid protest arise from the initiation of a procurement or the process for determining a need for certain goods and services).

Plaintiff also relies on *FFTF Restoration*, in support of its claim that the court has jurisdiction of the complaint under the Tucker Act. Pl.'s Resp. 3. The court does not find *FFTF Restoration* helpful to plaintiff. In *FFTF Restoration* the bid protest was filed in response to the government's cancellation of a "negotiated procurement." *FFTF Restoration*, 86 Fed.Cl. at 236–37. The *FFTF Restoration* plaintiff was an aggrieved bidder who claimed that by soliciting bids and thereafter cancelling the contract for the deactivation and decommissioning of the Fast Flux Test Facility at the Hanford Nuclear Reservation, the government had breached its implied-in-fact duty to fairly and honestly consider federal procurement proposals. *Id.* at 228. In that case, the court chose not to "exempt the decision to cancel a negotiated procurement from judicial scrutiny." *Id.* at 240. Unlike this case, *FFTF* arose out of a procurement. *See id.* at 228. GTS is not complaining about a Corps decision that is connected to a procurement. Instead, GTS complains of the Corps decision not to renew an option under an existing contract, *see* Compl. ¶ 22, an issue of contract management or administration.

More helpful to the court are cases discussed by defendant which address disputes arising from options and are, without exception, decided under the CDA. *See* Def.'s Mot. 15 n. 1 (citing *Alliant Techsys., Inc. v. United States (Alliant Techsystems)*, 178 F.3d 1260, 1264–65 (Fed.Cir.1999), *reh'g denied*, 186 F.3d 1379 (Fed.Cir.1999); *Cessna Aircraft Co. v. Dalton (Cessna Aircraft)*, 126 F.3d 1442, 1445–46 (Fed.Cir.1997); *TMI Mgmt. Sys., Inc. v. United States (TMI Mgmt. Sys.)*, 78 Fed.Cl. 445, 447 (2007)).

In *Cessna Aircraft* the Navy had a contract with Cessna for the provision of training and related maintenance for undergraduate Naval Officers at the U.S. Naval Air Station, Pensacola, Florida. *Cessna Aircraft*, 126 F.3d at 1444; *see Cessna Aircraft Co. (Cessna I)*, 93–3 B.C.A. (CCH) ¶ 25,912 at 128,876 (A.S.B.C.A. Mar.12, 1993).[6] The contract, which expired on September 30, 1988, included an option to extend contract performance for three additional years. *Cessna Aircraft*, 126 F.3d at 1443 (citing *Cessna I*, 93–3 B.C.A. at 128,876). Cessna argued that the Navy did not timely exercise its option on the contract and that it had extended the contract before funds for the extended term had been appropriated. *Cessna Aircraft*, 126 F.3d at 1448; *Cessna Aircraft Co. (Cessna II)*, 96–1 B.C.A. (CCH) ¶ 27,966, 139,689 (A.S.B.C.A. Sept.21, 1995). However, despite its contention that the option was untimely exercised, Cessna continued to perform for the three-year duration of the option.[7] *Cessna Aircraft*, 126 F.3d at 1448. In 1991, Cessna filed a certified claim with the CO seeking $25.7 million for additional work performed during the three-year period. *Id.* When the CO failed to issue a decision on Cessna's claim, Cessna sought review before the Armed Services Board of

---

6. In *Cessna Aircraft Co. v. Dalton (Cessna Aircraft)*, 126 F.3d 1442 (Fed.Cir.1997), the Federal Circuit heard the Navy's appeal from two cases decided by the Armed Services Board of Contract Appeals (ASBCA). *Cessna Aircraft*, 126 F.3d at 1444; *see Cessna Aircraft Co. (Cessna I)*, 93–3 B.C.A. (CCH) ¶ 25,912 (A.S.B.C.A. Mar.12, 1993); *Cessna Aircraft Co. (Cessna II)*, 96–1 B.C.A. (CCH) ¶ 27,966 (A.S.B.C.A. Sept.21, 1995). In *Cessna II* the court addressed the Navy's actions regarding the contract option. *Cessna II*, 93–3 B.C.A. at 139,683 (explaining that the decision addresses "Counts V ('Option

Not Timely Exercised') and Count VI ('Option Required Voluntary Services' ")).

7. Cessna informed its CO that it was "proceeding [in performance] under the assumption that its services would soon be embodied in a definitive contract." *Cessna Aircraft*, 126 F.3d at 1446. The CO responded with a letter stating that the option had been properly exercised and instructed Cessna to continue to perform the contract as modified by the option. *Id.*

Contract Appeals (ASBCA). *Id.* at 1443; *see Cessna II,* 96–1 B.C.A. at 139,683. The ASBCA decided that Cessna's claims, including the Navy's right to exercise the option, "stemmed from the terms of [its] contract [with the Navy]" and that "[u]nder the CDA, [the ASBCA has] jurisdiction 'to decide any appeal from a decision of a contracting officer ... relative to a contract made by its agency.'" *Cessna I,* 93–3 B.C.A. at 128,881 (quoting 41 U.S.C. § 607(d)). The ASBCA then denied on the merits Cessna Aircraft's claim that appellee Navy had failed timely and properly to exercise its option on the original contract. *Cessna Aircraft,* 126 F.3d at 1445; *Cessna II,* 96–1 B.C.A. at 139,700.

The Federal Circuit endorsed the characterization by the ASBCA of the option dispute in *Cessna Aircraft* as a claim under the CDA. *Id.* at 1447 ("Like the [ASBCA], we view Cessna's claims as 'grounded in the CDA.'"). Notably, Cessna complied with the administrative requirements of the CDA by filing a certified claim with the CO before filing a case with the ASBCA. *Id.* at 1446. The Federal Circuit agreed with the ASBCA on both its jurisdictional decision and its judgment on the merits of the case. *Cessna Aircraft,* 126 F.3d at 1444. Like plaintiff in this case, Cessna based its claim on an option contained in an existing contract. When, as here, the CDA applies, the CDA is the exclusive mechanism for the resolution of the dispute. *Dalton,* 50 F.3d at 1017. GTS must exhaust its administrative remedies before bringing a CDA claim before this court.

In *Alliant Techsystems* the government contractor objected to the government's attempt to exercise an option. *Alliant Techsys.,* 178 F.3d at 1263. The *Alliant Techsystems* plaintiff's claim was found to be within the jurisdiction of the court because it had properly filed a claim with the CO pursuant

to the CDA.[8] *Id.* at 1265. Just as the *Alliant Techsystems* plaintiff was required to follow the CDA's administrative steps to bring its case as within the court's jurisdiction to address a dispute regarding the exercise of an option in an existing contract, GTS must also comply with the CDA before its claim can be properly brought before this court. *See* 41 U.S.C. §§ 605, 609; *see also Continental,* 29 Fed.Cl. 644, 648.

3. Expansion of the Court's Tucker Act Jurisdiction Does Not Extend to the Government's Failure to Exercise an Option on an Existing Contract

While the definition of "in connection with a procurement" under the ADRA has been clarified by the Court of Appeals for the Federal Circuit in a way which has broadened prior interpretations of this court, the government's failure to exercise an option on an existing contract is not encompassed by that clarification. *See Distributed Solutions,* 539 F.3d at 1346. Nor is plaintiff aided by an earlier Federal Circuit description of Tucker Act jurisdiction after its amendment by the *ADRA in RAMCOR Services Group, Inc. v. United States (RAMCOR),* 185 F.3d 1286, 1289 (Fed.Cir.1999), as "very sweeping in scope." Cf. Pl.'s Resp. 2. The Federal Circuit stated in *RAMCOR* that "[a]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." *RAMCOR,* 185 F.3d at 1289. RAMCOR, however, is distinguishable on its facts. RAMCOR had a contract with the Immigration and Naturalization Services (INS) to provide maintenance and support services at the Border Patrol Academy in Charleston, South Carolina. *Id.* at 1287. Upon the expiration of a five-year contract with RAMCOR, the INS determined that the contract had involved an "impropriety" and

---

8. Defendant argues that the administrative exhaustion requirement has been strictly enforced by the Federal Circuit. Def.'s Mot. 16 (citing *England v. Swanson Group, Inc.,* 353 F.3d 1375, 1379 (Fed.Cir.2004)). However, the court in *Alliant Techsystems, Inc. v. United States (Alliant Techsystems),* 178 F.3d 1260 (Fed.Cir.1999), *reh'g denied,* 186 F.3d 1379 (Fed.Cir.1999) allowed a non-certified claim filed by plaintiff with the CO to satisfy the certified claim requirement. *Alliant Techsys.,* 178 F.3d at 1264–65 (citing 48

C.F.R. § 52.233–1 (2009)). Further, the *Alliant Techsystems* Contacting Officer's (CO) letter responding to plaintiff was considered by the court to be a "final decision" pursuant to 48 C.F.R. § 52.233–1(f). *Id.* While the *Alliant Techsystems* court used a flexible approach to the exact form of the required CDA administrative documents, it did not dispense with the requirement of the administrative procedure as mandated by *England.* Compare *Alliant Techsys.,* 178 F.3d at 1264–65, *with England,* 353 F.3d at 1379.

decided to award a new contract to a different contractor. *Id.* INS extended the contract with RAMCOR for two six-month periods after the initial expiration of its contract. *Id.* After the two extensions ran, INS began a new contract award process and excluded RAMCOR from that bidding process. *Id.* RAMCOR filed a pre-award bid protest with the General Accounting Office (GAO), which triggered an automatic stay. *See id.* (citing Competition in Contracting Act (CICA), 31 U.S.C. §§ 3551–56 (1994)). The stay prevented INS from awarding a new contract pending a decision by the GAO on the protest. *Id.* Under a provision of CICA which allows for the override of a stay in "urgent and compelling" circumstances, the INS issued a "Written Determination and Finding" setting forth "urgent and compelling circumstances." *Id.* (citing CICA, 31 U.S.C. §§ 3551–56). After issuing its override, INS awarded the contract to a contractor other than RAMCOR. *Id.* RAMCOR brought a preliminary injunction action in the Court of Federal Claims in order to prohibit the other contractor from performing under the contract. *Id.*

The Court of Federal Claims decided that, because plaintiff had not asked the court to review the merits of the award of the base support services contract, it did not have jurisdiction. *Id.* at 1288. RAMCOR appealed, asserting that amendments to 28 U.S.C. § 1491 under the ADRA "granted the Court of Federal Claims jurisdiction over RAMCOR's action for a preliminary injunction." *Id.* The Federal Circuit agreed with RAMCOR that the Court of Federal Claims had jurisdiction, citing the portion of § 1491(b)(1) which affords jurisdiction to the Court of Federal Claims when "the award of a contract or *any alleged violation of statute* or regulation *in connection with a procurement* or a proposed procurement" is at issue. *Id.* at 1288, 1291. The Federal Circuit held that RAMCOR's objection to the lifting of the stay was within the jurisdiction of the court under the ADRA because the objection to the § 3553(c)(2) override was an objection to a statute which had a "connection to a procurement proposal, [and] an alleged violation suffices to supply jurisdiction." *Id.* at 1289. The *RAMCOR* court determined that the

case fell under the court's ADRA jurisdiction because of the direct connection between the stay and the procurement. *Id.* Claims of bad faith in the exercise of options have been established to be within the province of the CDA. *E.g., Krygoski Constr. Co. v. United States,* 94 F.3d 1537, 1541 (Fed.Cir.1996). *RAMCOR* does not govern this case.

Nor is plaintiff assisted by *Ozdemir v. United States,* 89 Fed.Cl. 631 (2009), which also offered an expansive definition of the court's jurisdiction in bid protest matters when it held that a procurement was not necessary for the Court of Federal Claims to have bid protest jurisdiction. *Id.* at 632. The plaintiff, Mr. Ozdemir, submitted a response to a solicitation distributed by the Department of Energy (DOE) which invited potential offerors to submit technical ideas in concept papers. *Id.* The impetus for the solicitation was the DOE's receipt of a financial assistance award from the Advanced Research Projects Agency—Energy (ARPA–E) which the DOE used to create a new internal organization to "foster research and development of transformational energy-related technologies." *Id.* at 632–33. Mr. Ozdemir failed to request an application control number (a necessary precursor to filing a concept paper). *Id.* at 632–33. When Mr. Ozdemir attempted to file his paper without the control number, it was rejected by the DOE, thus creating the impetus for his bid protest. *Id.* at 633. The United States filed a motion to dismiss pursuant to RCFC 12(b)(1). *Id.* The government argued that the plaintiff's protest was not within the jurisdiction of the court because the call for concept papers was not a procurement. *Id.* at 633.

In its opinion, the *Ozdemir* court discussed at length the jurisdictional grant of the Tucker Act as modified by the ADRA. *Id.* at 634–35; *see* 28 U.S.C. § 1491(b)(1). The court determined that ADRA "jurisdiction ... do[es] not require a procurement connection." *Ozdemir,* 89 Fed.Cl. at 634. The possible expansion of jurisdiction contemplated by *Ozdemir* provides no support for GTS's assertion that the court's jurisdiction under the ADRA extends to existing contracts and allegations of bad faith regarding the govern-

ment's failure to exercise an option. As defendant points out, the Federal Circuit has repeatedly pointed to the CDA as the vehicle by which aggrieved parties to an option contract must resolve their claims. Def.'s Mot. 15 n. 9 ("Indeed all species of challenges to the government's decision whether to exercise a discretionary option, including those unrelated to allegations of bad faith, have been resolved pursuant to the Court's CDA jurisdiction.") (citing *Alliant Techsys.,* 178 F.3d at 1264–65; *Cessna Aircraft,* 126 F.3d at 1445–46; *TMI Mgmt. Sys.,* 78 Fed.Cl. at 447).

## III. Conclusion

The court lacks jurisdiction to hear plaintiff's claim under the ADRA. Instead, plaintiff must pursue relief pursuant to the requirements set forth in the CDA. *See Omega World Travel, Inc. v. United States,* 82 Fed. Cl. 452, 461 (2008) (dismissing Omega's bad faith allegation, which was based on the government's alleged mishandling of task orders under a contract with Omega, because of plaintiff's failure to exhaust its CDA-mandated administrative remedies); *Ravens Group, Inc. v. United States,* 78 Fed.Cl. 390, 398 (2007) (dismissing a bad faith allegation based on the government's failure to exercise a discretionary option because "28 U.S.C. § 1491(b) provides no jurisdiction for claims of wrongful termination or breach" and "[c]laims for breach must be brought pursuant to the [CDA]"). The court lacks jurisdiction over GTS's complaint because plaintiff did not comply with the provisions of the CDA, 41 U.S.C. §§ 601–613, prior to filing its Complaint.

Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.